**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DANIEL A. COLLINS, JR. (#247846)**  CIVIL ACTION

**VERSUS**

**JAMES M. LeBLANC, ET AL.**  NO. 11-0077-JJB-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 19, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

DANIEL A. COLLINS, JR. (#247846)                        CIVIL ACTION

VERSUS

JAMES M. LeBLANC, ET AL.                               NO. 11-0077-JJB-DLD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions to Dismiss, rec.doc.nos. 19 and 24. These motions are opposed.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc, Warden N. Burl Cain, Ass't Warden Donald Barr, Dr. Jonathan Roundtree, Dr. Randy Lavesphere (erroneously identified as "Dr. Lavasphere" in the Complaint), Dr. Heise, and Dr. Williams, complaining that the defendants have violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs, notably by failing to diagnose his serious medical condition.[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule

---

[1] Defendant Dr. Heise has not been served with process, has not appeared in this proceeding, and has not participated in the instant motion. Pursuant to 42 U.S.C. § 1915(e) and 1915A, however, this Court is authorized to dismiss a claim asserted against a defendant upon initial review if the Court determines that the claim is frivolous, malicious or fails to state a claim upon which relief may be granted. See <u>Green v. McKaskle</u>, 788 F.2d 1116 (5th Cir. 1986). This Court, therefore, will recommend dismissal of the plaintiff's claims asserted against defendant Dr. Heise for the same reasons as are stated herein relative to the moving defendants.

12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level".  Bell Atl. Corp. v. Twombly, supra.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, supra.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'"  Id.  Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."  Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Id.  (citations omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful conduct] devoid of further factual enhancement."  Id. (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that, on March 25, 2009, he sought medical attention at LSP, complaining, inter alia, of a persistent neck problem.  On April 16, 2009, he again complained of neck pain and, on that occasion, a medical technician noted two dime-sized bumps, one on the plaintiff's throat and one on the back of the plaintiff's neck.  When the plaintiff was thereafter examined by defendant Dr. Williams, the defendant allegedly ignored the referenced bumps, treated the plaintiff only for tonsilitis, and failed to order x-rays or diagnostic testing.  Three days later, on April 19, 2009, the plaintiff again complained of swelling and pain in his throat, but Dr. Williams again failed to order x-rays or diagnostic tests and, instead, again treated the plaintiff

only for tonsilitis.  Approximately four (4) months later, on August 10, 2009, the plaintiff again sought medical attention, complaining of "the same problem with his neck", and was seen at that time by defendant Dr. Heise.  Although Dr. Heise allegedly noted a "knot" in the plaintiff's neck, the defendant took no other action and ordered no diagnostic testing.  Finally, in February, 2010, the plaintiff was seen by Defendant Dr. Lavasphere, who noted three (3) "knots" in the plaintiff's neck and ordered x-rays and blood work at that time.  When this blood work reflected an abnormally high white blood count, the plaintiff was referred to an outside facility, where a hematologist/oncologist diagnosed the plaintiff as suffering with Chronic Lymphocytic Leukemia.  As a result, the plaintiff has since undergone several rounds of chemotherapy at the New Orleans Medical Center.  He complains that the defendants at LSP exhibited deliberate medical indifference by failing to diagnose his condition earlier and by failing to order diagnostic testing when faced with an obvious serious medical condition which warranted such testing.  He also complains of several lapses in medical treatment after his diagnosis.  Specifically, he complains that on August 24, 2010, he was discharged from the New Orleans Medical Center to LSP with instructions that his blood be tested three times per week and that the results be faxed to the Medical Center, but prison officials neglected to do so on two occasions during the ensuing thirty days.  In addition, on November 11, 2010, the plaintiff was discharged from the Medical Center to LSP with instructions that a port located in his chest be flushed once per month, but prison officials neglected to do so, and the port was not flushed until the plaintiff returned to the Medical Center on December 20, 2010, a month and ten days later.  Further, on January 20, 2011, the plaintiff was discharged from the Medical Center to LSP with a prescription for medication to address his complaints of allergy and sinus problems because the medications which he was receiving at LSP for these problems were not working.  Notwithstanding, defendant Dr. Roundtree intentionally refused to provide the new medication, and the plaintiff was unable to sleep for ten days "because of severely painful itching and scratching," and his allergy and sinus complaints have grown worse.  Finally, the plaintiff asserts that defendants LeBlanc, Cain and Barr "have a legal duty and obligation for the health and

welfare of inmates under their custody or control," that defendant Roundtree, as the chief medical officer at LSP, is "responsible for procedures and acts of other doctors in their treatment of inmates," and that defendant LeBlanc "is responsible to ensure that ... qualifications of doctors providing medical care to inmates are sufficient to ensure reasonably competent care."

Addressing first the plaintiff's claims asserted against defendants LeBlanc, Cain and Barr, the defendants contend that the plaintiff has failed to sufficiently allege the personal participation of these defendants in the violations alleged. In this regard, in order for a defendant state official to be liable under § 1983, the official must either have been personally involved in conduct causing the alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the conduct of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Any allegation that these defendants are responsible for the actions of their subordinates or co-employees is alone insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. Lozano v. Smith, supra.

Applying this standard in connection with the plaintiff's claims asserted against defendants LeBlanc, Cain and Barr, the Court concludes that the defendants' motion is well-founded. The plaintiff makes no factual assertion whatever that these defendants had any personal or direct involvement in his medical care and treatment between March, 2009, when the presence of "bumps" or "knots" in his neck were first noted, and February, 2010, when diagnostic tests were conducted which resulted in his diagnosis of leukemia. As the Secretary of the Louisiana Department of Public Safety and Corrections, the Head Warden at LSP, and the Ass't Warden at Camp J at LSP, respectively, it is clear that defendants LeBlanc, Cain and Barr stand principally

in a supervisory role with regard to the operation of the prison, its medical department, and its personnel. See Thompson v. Steele, 709 F.2d 381 (5th Cir.), cert. denied, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983) ("Personal involvement is an essential element of a civil rights cause of action"). In fact, the plaintiff's principal allegation in his Complaint relative to these defendants is simply that they are "legally responsible for the overall operation [of the facility] ... and for the welfare of all ... inmates." This is a statement of purely supervisory responsibility. Accordingly, the Court finds that the plaintiff has failed to sufficiently allege the personal participation of these defendants in the plaintiff's medical care so as to subject them to liability in connection therewith.[2]

Further, the plaintiff has not adequately pleaded the existence of any affirmative wrongful policy or practice at LSP which has resulted in his being denied adequate medical treatment. To the contrary, the plaintiff's allegations in this regard are conclusory in the extreme and, as such, are not entitled to a presumption of truth when being evaluated in the context of a motion to dismiss. See Ashcroft v. Iqbal, supra (finding that conclusory allegations of the existence of a wrongful policy are "not entitled to be assumed true"). All that the plaintiff alleges, with no factual support whatever, is that the Department of Corrections maintains a practice of hiring physicians (identified in the Complaint as defendants Roundtree, Williams and Lavesphere) who have been disciplined by the Louisiana Medical Review Board, and that there is a policy or practice at LSP, due to a purported "financial constraint policy", of denying or delaying diagnostic testing of inmates until conditions become serious. These conclusory assertions, however, are insufficient to defeat the defendants' motion to dismiss, and there is no basis for giving them credence. The plaintiff fails to explain how

---

[2] Although the plaintiff asserts that these defendants may have been placed on notice of his complaints through administrative grievances or sick call requests filed by him, the law is clear that a claim that a defendant has not adequately investigated or responded to an inmate's complaints or grievances is not one of constitutional dimension and does not lead to a conclusion that the defendants were personally involved in the constitutional violation alleged. See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005) (finding no due process violation in the failure of prison officials to investigate or respond favorably to an inmate's administrative claim). See also Anderson v. Pratt, 2002 WL 1159980 (N.D. Tex., May 29, 2002) (finding that the warden's review and denial of an inmate's grievance did not establish personal involvement on the part of the warden in the alleged deprivation of the inmate's constitutional rights).

any proceedings before the Louisiana Medical Review Board may have affected the defendant physicians' provision of medical care, and there is no legal or factual basis for concluding that there is a curtailment or limitation of diagnostic testing at the prison. Accordingly, there is no basis for the imposition of liability against these defendants, and they are entitled to dismissal from this proceeding.

Turning to the plaintiff's claims asserted against the individual defendant physicians, the Court finds that the plaintiff has failed to sufficiently allege any actionable wrongdoing by these defendants. In order for an inmate plaintiff to state a claim of improper or inadequate attention to medical needs under the Eighth Amendment, he must assert both that appropriate care has been denied and that such denial has constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, as stated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." The deliberate indifference standard sets a high bar to reach; the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Applying this standard to the facts in the instant case, it does not appear that the plaintiff

has alleged any violation of his constitutional rights. To the contrary, his claim that the defendant physicians failed to timely diagnose his medical condition is principally one of negligence or medical malpractice which is not actionable under § 1983. Varnado v. Lynaugh, supra. He acknowledges that each time he requested medical attention between March, 2009, and February, 2010, he was seen by a medical technician and/or physician and was provided with medical treatment, albeit treatment which he now believes to have been improper. The mere fact, however, that his condition remained undiagnosed for approximately a year does not establish that any defendant intentionally treated him incorrectly or was deliberately indifferent to a substantial risk of serious harm which they ignored. Domino v. Texas Dept. of Criminal Justice, supra (holding that "[i]t is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference"); Edwards v. Kukua, 2010 WL 4806862 (S.D. Tex., Sept. 24, 2010) ("To the extent that Plaintiff challenges Defendant's diagnosis, he fails to state a claim for relief pursuant to § 1983"); Edwards. Jones v. Corrections Corp. of America, 2007 WL 709012 (N.D. Miss., March 5, 2007) (same). To the contrary, the several health care request forms which the plaintiff submitted to prison officials (copies of which are attached to his Opposition to the defendants' motions), wherein he set forth the specific nature of his complaints and symptoms, would not likely have placed the defendants on notice of the seriousness, or even the existence, of the "bumps" or "knots" in his neck which he now asserts the defendants should have focused upon. Specifically, his request form of March 25, 2009, indicates that he was complaining at that time of "back problems for over a year", of his right knee giving out, and of not having seen a physician for a "neck complaint made over 8 months ago." There is no mention therein of any "bumps" or "knots" in his neck. On April 16 and 19, 2009, the plaintiff complained of the "same back and neck problems" and that his throat was swollen and painful. The plaintiff was seen by defendant Dr. Williams at that time, and Dr. Williams apparently concluded that the plaintiff was suffering with tonsilitis, for which condition Dr. Williams prescribed medication and follow-up care. Although a medical technician, during a physical examination at that time, noted the presence of two small bumps in the area of the

plaintiff's throat and neck, there is no indication that the plaintiff brought these bumps to the attention of Dr. Williams, that these bumps were emphasized by the plaintiff as being symptomatic, or that they represented an independently objective serious medical condition of which the defendant was subjectively aware. Four months later, in August, 2009, the plaintiff again submitted a request form, this time complaining, generally, of "the same problem with my neck as in last request." Although again not mentioned by the plaintiff in the request form, a physical examination by a medical technician revealed a "small knot" on the plaintiff's neck which the health care provider noted "appear[ed] to be a gland" and which he also noted to exhibit no redness and to be accompanied by no reported irritation or pain. This encounter was apparently reviewed by defendant Dr. Heise, who took no further action at that time. It was not until December, 2009, that the plaintiff finally submitted a request form wherein he sought treatment for the specific condition or symptom which he now emphasizes, i.e., "a small lump on the left bottom of my neck and another on the lower back, left side of my neck." It is this last request which prompted defendant Dr. Lavesphere to order x-rays and blood work and which led to the plaintiff's current diagnosis.

These facts do not suggest that any defendant was deliberately indifferent to a perceived serious risk of harm to the plaintiff's health or well-being. As noted, Dr. Williams examined the plaintiff in April, 2009, and diagnosed him as suffering only with tonsilitis, which the defendant treated. Dr. Heise reviewed and evaluated an encounter between the plaintiff and a health care provider in August, 2009, which encounter referred only to a "small knot" noted on the plaintiff's neck, which "knot" appeared to be a gland and was accompanied by no reported symptomatology. And finally, Dr. Lavesphere evaluated the plaintiff in response to the plaintiff's first explicit complaint, in December, 2009, of "lumps" on his neck. Dr. Lavesphere in fact undertook to perform diagnostic testing at that time, and this testing led to the diagnosis of which the plaintiff now complains. Prior to that time, however, it does not appear that any defendant was faced with a specific complaint, symptom or finding which clearly warranted such testing. Accordingly, there is no legal or factual basis for concluding that any defendant did anything other than exercise his

professional judgment, and for this reason, the plaintiff has failed to state a claim against these defendants.  See Edwards v. Kukua, supra ("As long as medical personnel exercise professional judgment, their behavior will not violate a prisoner's constitutional rights").

Finally, the plaintiff complains that, after his diagnosis of leukemia, there were several lapses in the provision of medical care which warrant a finding of liability.  The Court does not agree.  Specifically, the plaintiff complains that medical personnel at LSP failed to perform blood tests on two occasions during a 30-day period after August 24, 2010, notwithstanding that they had been instructed to undertake such tests three times per week during this period.  In addition, the plaintiff complains that a port in his chest was not flushed as ordered within thirty days after November 11, 2010, and was not in fact flushed until an additional ten days later on December 21, 2010.  Finally, the plaintiff complains that, upon discharge from the New Orleans Medical Center on January 10, 2011, with a prescription for medicines to address his sinus and allergy problems, he was not given these medications by defendant Dr. Roundtree, which caused him to suffer severe itching and loss of sleep for ten days and which caused his sinus and allergy problems to worsen.  In the first place, the plaintiff has, for the most part, failed to identify any named defendant who personally and directly participated in the events complained of, and such personal participation is a prerequisite to liability under § 1983.  Lozano v. Smith, supra.  Second, the plaintiff has failed to suggest that he suffered any harm in fact, much less serious harm, as a result of the alleged neglect to perform two of approximately 12 ordered blood tests over a 30-day period in August, 2010, or of the alleged 10-day delay in flushing the referenced port in November, 2010.  See Mendoza v. Lynaugh, supra (holding that a mere delay in treatment does not support liability in the absence of resulting serious harm).  Finally, the plaintiff's complaint of 10 days of itching and loss of sleep due to an alleged failure to provide medications prescribed for him by an outside facility does not state a claim of a serious medical need sufficient to support a claim under § 1983.  As above noted, in order to state a violation of the Eighth Amendment, the deprivation alleged must be objectively, "sufficiently serious", and a prison official's act or omission must result in the "denial

of the minimal civilized measure of life's necessities." Farmer v. Brennan, supra. The plaintiff acknowledges in the instant case that he was receiving other medications to address his sinus and allergy complaints during this period and, as a general proposition, complaints of itching skin and loss of sleep do not constitute conditions serious enough to support a deliberate indifference claim. See Stepnay v. Goff, 164 Fed.Appx. 767 (10th Cir. 2006) (recognizing that "most skin conditions are not intuitively serious"); Tasby v. Cain, 86 Fed.Appx. 745 (5th Cir. 2004) (finding that inmate's allegation relative to skin rash "does not establish that he suffered 'serious harm'"); Alexander v. Tippah County, Mississippi, 351 F.3d 626 (5th Cir. 2003), cert. denied, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004) (finding that inmate's claim, which included "lack of sleep", was not sufficient to support a claim); Myers v. Valdez, 2005 WL 3147869 (N.D. Tex., Nov. 17, 2005) (finding that allegations of lack of sleep and extreme rash were insufficient to state a claim); Smith v. Crose, 2006 WL 2591075 (D. N.J., Sept. 8, 2006) (finding that a claim of a "reduced ability to fall asleep does not amount to a serious medical need"); Gonzalez-Reyna v. Ellis, 2009 WL 2421482 (E.D. Va., July 27, 2009) (concluding that "it is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical condition to support an Eighth Amendment violation"); Samuels v. Jackson, 1999 WL 92617 (S.D. N.Y., Feb. 22 1999) (finding that inmate's claim regarding "papules, vesicles, pustules, burrows, and intense itching was not a "serious medical need" for purposes of the Eighth Amendment). In the instant case, the plaintiff has alleged, at most, itching and loss of sleep for a period of ten days. This does not amount to a "sufficiently serious" deprivation. Accordingly, the plaintiff's claim in this regard must fail.

The plaintiff also seeks to invoke the supplemental jurisdiction of this court with regard to his claims arising under state law. District courts, however, may decline to exercise supplemental jurisdiction over a claim or claims if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367. In the instant case, inasmuch as the Court recommends dismissal of the plaintiff's federal claims, it is appropriate that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motions to Dismiss, rec.doc.nos. 19 and 24, be granted, dismissing the plaintiff's federal claims asserted against the defendants, with prejudice. It is further recommended that the plaintiff's claims asserted against defendant Dr. Heise be similarly dismissed, with prejudice, pursuant to 42 U.S.C. § 1915(e), for failure to state a claim upon which relief may be granted, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 19, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**